IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Brent W. Cook, )
    Plaintiff, )
  )
v. )   1:21cv949 (AJT/WEF)
  )
GT Collins, *et al.*, )
    Defendants. )

## MEMORANDUM OPINION

Plaintiff Brent W. Cook, a former Virginia inmate proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 to redress alleged violations of Plaintiff's rights arising from his 2021 incarceration at Henrico County Jail ("HCJ"). [*See* Am. Compl., Dkt. No. 8]. Defendants GT Collins, Alissa Gregory, Dr. Cane, and Chief Felton (the "moving Defendants") have jointly filed a Motion for Summary Judgment. [Mot. Summ. J., Dkt. No. 19; Mem. Supp. Mot. Summ. J., Dkt. No. 20]. For the following reasons, the Motion for Summary Judgment [Dkt. No. 19] will be granted.

### I. Relevant Procedural History

Plaintiff's Amended Complaint, the operative pleading in this case, asserted § 1983 claims against five individuals who worked at HCJ or the Henrico County Sheriff's Office at all relevant times: the four moving Defendants and Defendant Nurse Acree. [*See* Am. Compl. at 16–17].[1] Plaintiff also asserted § 1983 claims against an officer of the Henrico County Police Department, Defendant Detective Grey. [*See id.* at 17].

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the parties' submissions.

By Order dated January 24, 2023, the Court dismissed Defendant Grey without prejudice pursuant to Federal Rule of Civil Procedure 4(m). [Order at 2, Dkt. No. 28]. By Order dated February 15, 2023, the Court denied without prejudice a Motion to Dismiss filed by Defendant Acree. [Order at 1–2, Dkt. No. 29].

Now before the Court is the moving Defendants' Motion for Summary Judgment, filed on June 27, 2022. [Mot. Summ. J. at 1–3]. In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the moving Defendants notified Plaintiff that (1) Plaintiff was entitled to file a response to their Motion for Summary Judgment and that any such response had to be filed within twenty-one days; (2) Plaintiff's failure to respond could lead the Court to enter judgment for Defendants based on their submissions; (3) Plaintiff was required to identify all facts stated by Defendants with which he disagreed, and to set forth his version of the facts by offering affidavits or sworn statements signed under penalty of perjury; and (4) Plaintiff was entitled to file a legal brief in opposition to Defendants' brief. [Mot. Summ. J. at 1–2]; *see* E.D. Va. Loc. Civ. R. 7(K). To date, Plaintiff has not responded to the Motion for Summary Judgment or sought an extension of time to respond, and the time to do so has expired.

The Court has reviewed and considered Plaintiff's Amended Complaint; the moving Defendants' Motion for Summary Judgment; the parties' other submissions; and all of the affidavits, documents, and exhibits attached to each of those filings. *See generally* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). The Motion for Summary Judgment is ripe for adjudication.

## II. Factual Background

### A.) Plaintiff's Allegations[2]

Plaintiff alleges that he received "no medical treatment for chronic pain, Attention Deficit disorder, post traumatic disorder, generalized anxiety disorder, chronic pain disorder, [and] chronic low back pain disorder" during his incarceration at HCJ. [Am. Compl. at 10]. Plaintiff allegedly can experience "a full blown manic attack . . . when [his] medicines are not taken or the wrong medicines are given." [*Id.*].

Plaintiff further alleges that "[e]ach of the defendants . . . had prior knowledge of [Plaintiff's] mental health." [*Id.* at 16]. More specifically, the moving Defendants and Defendant Acree allegedly received a January 29, 2021 letter from Plaintiff's personal physician, Dr. James E. Sellman, which identified Plaintiff's diagnoses and then-current medications. [*Id.* at 11, 13–14; *see* Letter, Dkt. No. 8-1 at 2]. Dr. Sellman concluded that certain medications were medically necessary to treat Plaintiff effectively, and also that Plaintiff medically required the accommodation of sleeping on a bottom bunk. [Am. Compl. at 13–14; Letter, Dkt. No. 8-1 at 2]. According to Plaintiff, HCJ staff "totally ignored" Dr. Sellman's recommendations. [Am. Compl. at 11]. Plaintiff claims that Defendants Acree, Cain, and Collins denied him the bottom bunk "for no medical reasons." [*Id.* at 14]. On March 20, 2021, Plaintiff allegedly injured himself when he was climbing to his assigned top bunk, became dizzy, and fell to the floor. [*See id.* at 11, 14].

---

[2] The allegations in this subsection come from Plaintiff's Amended Complaint, which is not a verified pleading entitled to evidentiary weight at summary judgment. *See Goodman v. Diggs*, 986 F.3d 493, 495 n.2, 498 (4th Cir. 2021). The Court presents them here simply to provide additional background. Furthermore, the events alleged in the Amended Complaint span many years and involve numerous individuals who have no relevance to this case. Most of Plaintiff's relevant allegations, moreover, relate only to his claims against Defendant Grey, who has been dismissed from this action pursuant to Rule 4(m). The Court will focus on the allegations specifically pertaining to the Defendants and claims that remain active in this matter.

3

On these alleged facts, Plaintiff claims that the four moving Defendants and Defendant Acree violated Plaintiff's constitutional rights by depriving him of adequate medical care during his incarceration at HCJ. [*See id.* at 16–17].

### B.) Evidence Pertaining to Plaintiff's Medications

Plaintiff's incarceration at HCJ lasted from January 26, 2021, to July 14, 2021. [Jail Records, Dkt. No. 20-5 at 1]. Plaintiff's HCJ medical records contain a letter from Dr. Sellman, which was faxed to HCJ staff on January 29, 2021. [*See id.*, Dkt. No. 20-2 at 63–64]. Dr. Sellman advised that Plaintiff had been diagnosed with Bipolar Disorder I; Attention Deficit Hyperactivity Disorder, combined type; Post Traumatic Stress Disorder; Generalized Anxiety Disorder; and Chronic Pain Syndrome – Chronic Low Back Pain Disorder. [*Id.* at 64]. Dr. Sellman identified the following medications as "medically necessary" to treat the symptoms of Plaintiff's conditions: (1) Lamotrigine, for mood stabilization; (2) Oxcarbazepine, for mood stabilization; (3) Quetiapine, for agitation and mood stabilization; (4) Gabapentin, for chronic pain; and (5) Clonazepam, for anxiety. [*Id.*].

As relevant here, HCJ policy does not allow Gabapentin or Clonazepam to be prescribed to inmates, due to "high rates of abuse and addiction" for those drugs. [Cane Decl. ¶ 3, Dkt. No. 20-14]. To replace Gabapentin, Defendant Cane, who is the Medical Director for HCJ, prescribed Naproxen combined with Extra Strength Tylenol for Plaintiff's back pain and capsaicin cream for Plaintiff's chest pain. [*See id.* ¶¶ 2, 6]. To replace Clonazepam, Plaintiff was prescribed Buspirone and Hydroxyzine to treat his anxiety. [*Id.* ¶ 7]. However, Defendant Cane avers that he was not involved in that decision, which was made by HCJ's mental health department. [*Id.*].

Plaintiff filed an inmate grievance on March 7, 2021, complaining that the medications prescribed to replace Gabapentin and Clonazepam were not effective. [Jail Records, Dkt.

4

No. 20-10 at 18]. Defendant Acree responded to Plaintiff's grievance and deemed it unfounded, stating, "Benzos and Gabapentin are not allowed in the jail setting per protocol."[3] [*Id.* at 19]. Plaintiff appealed that determination to the Jail Administrator, Defendant Collins. [*See id.*]. Defendant Collins denied the appeal and explained that he was "not qualified in the medical profession to overturn [the] decision." [*Id.*].

Defendant Gregory, the Sheriff for Henrico County, is "not personally involved with the medical treatment and related decisions" at HCJ and "had no role in Plaintiff's medical treatment" at HCJ. [Gregory Decl. ¶¶ 2–3, 5, Dkt. No. 20-13]. Likewise, Defendant Felton, the Chief Deputy at the Henrico County Sheriff's Office, is "not personally involved with the medical treatment decisions" at HCJ and "had no role in Plaintiff's medical treatment" at HCJ. [Felton Decl. ¶¶ 2, 5, 11, Dkt. No. 20-12]. "[T]he medical and mental health providers have sole judgment in their treatment of inmates." [*Id.* ¶ 6].

### C.) Evidence Pertaining to Plaintiff's Bunk Status

HCJ "maintains certain policies governing the criteria for bottom bunk assignments," as "it is understood that some inmates may not be able to climb up onto a top bunk due to various medical conditions." [Cane Decl. ¶ 8]. Under HCJ's applicable policy (the "Bottom Bunk Protocol"), the following factors are considered in issuing a "no top bunk" order for an inmate:

> (1) whether the inmate is more than 60 years of age; (2) whether the inmate has significant musculoskeletal immobility; (3) whether the inmate had any major surgery or trauma involving the back, beck, chest, abdomen, or extremities within the past six weeks; (4) a documentation history of seizure disorders on medication; (5) severe cardiac or pulmonary disease; (6) whether the inmate is on an active detox protocol; and (7) whether the inmate is pregnant.

[*Id.*]. Plaintiff initially was assigned a top bunk at HCJ. [Felton Decl. ¶ 4].

---

[3] "Benzos" in this context is short for benzodiazepines, a class of drug that includes Clonazepam. [*See* Cane Decl. ¶ 4].

5

On March 12, 2021, during a medical appointment with unknown HCJ staff, Plaintiff requested a bottom bunk. [*See* Jail Records, Dkt. No. 20-4 at 59]. Plaintiff was advised that he did not meet the criteria for receiving a bottom bunk assignment. [*Id.*]. In a sick call request dated March 16, 2021, Plaintiff complained of back pain and renewed his request for a bottom bunk. [Sick Call Request, Dkt. No. 8-1 at 11]. As before, Plaintiff was informed that the applicable criteria were not met. [*Id.*; Jail Records, Dkt. No. 20-4 at 77]. Plaintiff again asked for a bottom bunk in a sick call request dated March 22, 2021, adding that he had "severely injur[ed]" his arm while climbing into his top bunk, which had caused "severe pain." [Jail Records, Dkt. No. 20-4 at 10]. Once again, Plaintiff was told that he did not meet the criteria for a bottom bunk. [*Id.* at 78].

Plaintiff filed an inmate grievance on March 25, 2021, and repeated his request for a bottom bunk. [Jail Records, Dkt. No. 20-10 at 20]. Defendant Acree responded to the grievance and deemed it unfounded, stating, "Seen in March by provider and 'no top bunk' order denied. This was also explained on 3/22/21 by staff." [*Id.* at 21]. Plaintiff appealed to Defendant Collins, who denied Plaintiff's appeal and explained, "The provider denied your request that I cannot overturn." [*Id.* at 23].

Aside from Defendant Collins's rejection of Plaintiff's appeal, there is no evidence that any moving Defendant was personally involved in any of the above decisions to deny Plaintiff a bottom bunk. Defendants Gregory and Felton both attest that they "had no role in Plaintiff's ... bunk assignment" at HCJ. [Felton Decl. ¶ 11; Gregory Decl. ¶ 5]. Defendant Cane avers that he "was not personally involved in the decisions to deny Plaintiff's requests for bottom bunk privileges." [Cane Decl. ¶ 10].

On April 15, 2021, Plaintiff was reassigned to a "single bunk open dorm-styled cell." [Felton Decl. ¶ 4]. On May 27, 2021, Defendant Cane treated Plaintiff and prescribed him

6

Naproxen and Tylenol for chest and back pain relief. [*See* Jail Records, Dkt. No. 20-4 at 61; Cane Decl. ¶ 11]. On the same date, Defendant Cane "authorized a bottom bunk for Plaintiff indefinitely, even though he did not meet the Bottom Bunk Protocol, in light of his repeated requests and complaints for a bottom bunk." [Cane Decl. ¶ 12; *see* Jail Records, Dkt. No. 20-4 at 61].

### III. Analysis

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014); *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, the nonmovant must present specific facts that demonstrate a genuine dispute for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Rather, there must be enough evidence to enable a reasonable factfinder to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 252. Moreover, "at the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The critical inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The Court construes Plaintiff's Amended Complaint as raising § 1983 claims of inadequate medical care against the moving Defendants, specifically concerning: (1) Plaintiff's medications and (2) the disputed bunk assignment. Because Plaintiff was a pretrial detainee at all times relevant to the Amended Complaint, his claims arise under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). However, courts "have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs." *Id.*

A prison official violates the Eighth Amendment by "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

8

A deliberate-indifference claim consists of an objective and a subjective component. *Id.* "Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). Subjectively, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Under this standard, mere disagreements between an inmate and a physician over the inmate's proper medical care are not actionable absent exceptional circumstances." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (alteration and internal quotation marks omitted).

### A.) Plaintiff's Medications

First, Defendants Gregory and Felton have disclaimed any involvement in decisions about Plaintiff's medical treatment, and the record contains no evidence to the contrary. "To establish personal liability under § 1983, . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution," and "mere knowledge of such a deprivation does not suffice." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (alteration, citation, and internal quotation marks omitted). Relatedly, a defendant's status as a supervisor, without more, is not enough to sustain § 1983 liability. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Because Defendants Gregory and Felton undisputedly had no role in deciding which medications Plaintiff received, Plaintiff cannot maintain a § 1983 claim against them.

Moreover, the evidence concerning Plaintiff's medication claim amounts to nothing more than an ordinary doctor-patient dispute about the proper course of treatment. Such disagreements

9

are insufficient to sustain a deliberate-indifference claim absent exceptional circumstances, *Scinto*, 841 F.3d at 225, and no exceptional circumstances are present here. Plaintiff received several medications—to treat both his physical and mental-health conditions—consistently throughout his detainment at HCJ. [*See* Jail Records, Dkt. No. 20-2 at 17–61]. Plaintiff objected to the discontinuation of two prescriptions that were not available to HCJ inmates as a matter of policy, but he was prescribed other medicines as substitutes, and Plaintiff does not have a constitutional right to receive the medication of his choice. *See generally Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.").

On this record, no reasonable factfinder could conclude that any moving Defendant personally disregarded a known and excessive risk to Plaintiff's health or safety. The moving Defendants, therefore, are entitled to summary judgment as to Plaintiff's medication claim.

### B.) Plaintiff's Bunk Assignment

Similarly, it is undisputed that Defendants Gregory, Felton, and Cane had no personal involvement in denying Plaintiff's requested medical accommodation of a bottom bunk. Absent such personal involvement, those three Defendants cannot be held liable under § 1983.

Furthermore, the record does not support a § 1983 claim against the remaining movant, Defendant Collins. As with the dispute over Plaintiff's medications, the issue of Plaintiff's bunk assignment amounts to a difference of medical opinion as to treatment. Evidence indicates that Dr. Sellman recommended a bottom bunk for Plaintiff. [*See* Letter, Dkt. No. 8-1 at 2; Jail Records, Dkt. No. 20-4 at 61]. HCJ staff, applying the Bottom Bunk Protocol, reached a different conclusion. [*See* Jail Records, Dkt. No. 20-4 at 59, 77–78]. Defendant Collins—who, from the record, does not appear to be a medical provider—apparently did not feel qualified to override the

medical staff's determination. [*See* Jail Records, Dkt. No. 20-10 at 23]. All the while, Plaintiff was receiving treatment for his pain, and no evidence suggests that Defendant Collins subjectively knew that denying the extra medical accommodation of a bottom bunk posed an excessive risk to Plaintiff's health or safety. As a result, Plaintiff cannot establish that Defendant Collins acted with deliberate indifference.

Because there is no genuine dispute of material fact as to any of these issues, summary judgment is warranted for all moving Defendants as to Plaintiff's bunk-assignment claim.

### C.) Qualified Immunity

Besides contesting the merits of Plaintiff's claims, the moving Defendants argue that they are entitled to qualified immunity. [Mem. Supp. Mot. Summ. J. at 11–13]. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The first step of a qualified immunity analysis asks "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 232 (citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of [a] defendant's alleged misconduct." *Id.* (internal quotation marks omitted). "If the answer to either question is no, then the official is entitled to qualified immunity." *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021). Courts have discretion to address either of the two steps first, based on "the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

In this case, Plaintiff cannot meet either prong of the qualified immunity analysis. First, as discussed above, Plaintiff has not adduced facts that could support a reasonable finding that any

moving Defendant violated his constitutional rights. And second, if any such violation occurred, the right at issue was not clearly established at the relevant time. No reasonable official in the moving Defendants' positions would have known that (i) prescribing the substitute medications that Plaintiff received; (ii) denying Plaintiff his desired bunk assignment, in reliance on the Bottom Bunk Protocol; or (iii) relying on medical staff's judgments as to such issues violated any established constitutional right. Consequently, the moving Defendants enjoy qualified immunity.

Accordingly, for all the above reasons, the moving Defendants' Motion for Summary Judgment will be granted.

### IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, Defendants GT Collins, Alissa Gregory, Dr. Cane, and Chief Felton's Motion for Summary Judgment [Dkt. No. 19] will be **GRANTED**.

Entered this ___8th___ day of __March__ 2023.

Alexandria, Virginia

/s/
Anthony J. Trenga
Senior United States District Judge