IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Brent W. Cook, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>GT Collins, *et al.*, )<br>    Defendants. ) | 1:21cv949 (AJT/WEF) |

MEMORANDUM OPINION

Plaintiff Brent W. Cook, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, brought this action pursuant to 42 U.S.C. § 1983 to redress alleged violations of Plaintiff's rights arising from his 2021 incarceration at Henrico County Jail ("HCJ"). [*See* Am. Compl., Dkt. No. 8; Order at 1, Dkt. No. 9]. Defendant Nurse Acree has filed a Motion for Summary Judgment. [Mot. Summ. J., Dkt. No. 32; Mem. Supp. Mot. Summ. J., Dkt. No. 33]. For the following reasons, Defendant Acree's Motion for Summary Judgment [Dkt. No. 32] will be granted, Plaintiff's claims against Defendants John Doe and Jane Doe will be dismissed pursuant to 28 U.S.C. § 1915(e)(2), and this civil action will be dismissed.

**I. Relevant Procedural History**

Plaintiff's Amended Complaint, the operative pleading in this case, asserted § 1983 claims against five individuals who worked at HCJ or the Henrico County Sheriff's Office at all relevant times: Defendants GT Collins, Alissa Gregory, Dr. Cane, Chief Felton, and Nurse Acree. [*See* Am. Compl. at 16–17].[1] Plaintiff also asserted § 1983 claims against an officer of the Henrico County Police Department, Defendant Detective Grey. [*See id.* at 17].

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the parties' submissions.

In addition, the Amended Complaint lists two pseudonymous Defendants, "John Doe" and "Jane Doe," in the case caption. [*See id.* at 1]. However, the Amended Complaint contains no allegations concerning these Defendants and identifies no causes of action against them.

By Order dated January 24, 2023, the Court dismissed Defendant Grey without prejudice pursuant to Federal Rule of Civil Procedure 4(m). [Order at 2, Dkt. No. 28]. By Order dated March 8, 2023, the Court granted summary judgment in favor of Defendants GT Collins, Alissa Gregory, Dr. Cane, and Chief Felton. [Order at 1, Dkt. No. 31].

Defendant Acree now moves for summary judgment. [Mot. Summ. J. at 1–3]. In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Defendant Acree notified Plaintiff that (1) Plaintiff was entitled to file a response to the Motion for Summary Judgment and that any such response had to be filed within twenty-one days; (2) Plaintiff's failure to respond could lead the Court to grant the Motion for Summary Judgment on the basis of Defendant Acree's submissions; (3) Plaintiff was required to identify all facts stated by Defendant Acree with which Plaintiff disagreed, and to set forth Plaintiff's version of the facts by offering affidavits or sworn statements signed under penalty of perjury; and (4) Plaintiff was entitled to file a legal brief in opposition to Defendant Acree's brief. [Mot. Summ. J. at 1–2]; *see* E.D. Va. Loc. Civ. R. 7(K). To date, Plaintiff has not responded to the Motion for Summary Judgment or sought an extension of time to respond, and the time to do so has expired.

The Court has reviewed and considered Plaintiff's Amended Complaint; Defendant Acree's Motion for Summary Judgment; the parties' other submissions; and all of the affidavits, documents, and exhibits attached to each of those filings. *See generally* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Defendant Acree's Motion for Summary Judgment is ripe for adjudication.

## II. Factual Background

### A.) Plaintiff's Allegations[2]

Plaintiff alleges that he received "no medical treatment for chronic pain, Attention Deficit disorder, post traumatic disorder, generalized anxiety disorder, chronic pain disorder, [and] chronic low back pain disorder" during his incarceration at HCJ. [Am. Compl. at 10]. Plaintiff allegedly can experience "a full blown manic attack . . . when [his] medicines are not taken or the wrong medicines are given." [*Id.*].

Plaintiff further alleges that "[e]ach of the defendants . . . had prior knowledge of [Plaintiff's] mental health." [*Id.* at 16]. Several Defendants, including Defendant Acree, allegedly received a January 29, 2021 letter from Plaintiff's personal physician, Dr. James E. Sellman, which identified Plaintiff's diagnoses and then-current medications. [*Id.* at 11, 13–14; *see* Letter, Dkt. No. 8-1 at 2]. Dr. Sellman concluded that certain medications were medically necessary to treat Plaintiff effectively, and also that Plaintiff medically required the accommodation of sleeping on a bottom bunk. [Am. Compl. at 13–14; Letter, Dkt. No. 8-1 at 2]. According to Plaintiff, the staff at HCJ "totally ignored" Dr. Sellman's recommendations. [Am. Compl. at 11]. Plaintiff also claims that Defendant Acree, among others, denied him the bottom bunk "for no medical reasons." [*Id.* at 14]. On March 20, 2021, Plaintiff allegedly injured himself when he was climbing to his assigned top bunk, became dizzy, and fell to the floor. [*See id.* at 11, 14].

---

[2] The allegations in this subsection come from Plaintiff's Amended Complaint, which is not a verified pleading entitled to evidentiary weight at summary judgment. *See Goodman v. Diggs*, 986 F.3d 493, 495 n.2, 498 (4th Cir. 2021). The Court presents them here simply to provide additional background. Furthermore, the events alleged in the Amended Complaint span many years and involve numerous individuals who have no relevance to this case. Many other allegations, moreover, relate only to Defendants who have already been dismissed from this action. The Court will focus its discussion on Plaintiff's allegations that specifically pertain to Defendant Acree.

On these alleged facts, Plaintiff claims that Defendant Acree violated Plaintiff's constitutional rights by depriving him of adequate medical care during his incarceration at HCJ. [*See id.* at 16–17].

### B.) Evidence Pertaining to Plaintiff's Medications

Plaintiff's incarceration at HCJ lasted from January 26, 2021, to July 14, 2021. [Jail Records, Dkt. No. 20-5 at 1]. Plaintiff's HCJ medical records contain a letter from Dr. Sellman, which was faxed to HCJ staff on January 29, 2021. [*See id.*, Dkt. No. 20-2 at 63–64]. Dr. Sellman advised that Plaintiff had been diagnosed with Bipolar Disorder I; Attention Deficit Hyperactivity Disorder, combined type; Post Traumatic Stress Disorder; Generalized Anxiety Disorder; and Chronic Pain Syndrome – Chronic Low Back Pain Disorder. [*Id.* at 64]. Dr. Sellman identified the following medications as "medically necessary" to treat the symptoms of Plaintiff's conditions: (1) Lamotrigine, for mood stabilization; (2) Oxcarbazepine, for mood stabilization; (3) Quetiapine, for agitation and mood stabilization; (4) Gabapentin, for chronic pain; and (5) Clonazepam, for anxiety. [*Id.*].

HCJ policy does not allow Gabapentin or Clonazepam to be prescribed to inmates, due to "high rates of abuse and addiction" for those drugs. [Cane Decl. ¶ 3, Dkt. No. 20-14]. "This policy was issued prior to Plaintiff's detention at HCJ; it remained in effect during the entirety of Plaintiff's incarceration; and it has continuously remained in effect up to the present time." [Acree Decl. ¶ 6, Dkt. No. 32-5]. To replace Gabapentin, Defendant Cane prescribed Naproxen combined with Extra Strength Tylenol for Plaintiff's back pain and capsaicin cream for Plaintiff's chest pain. [*See* Cane Decl. ¶¶ 2, 6]. To replace Clonazepam, Plaintiff was prescribed Buspirone and Hydroxyzine to treat his anxiety. [*Id.* ¶ 7].

Plaintiff filed an inmate grievance on March 7, 2021, complaining that the medications prescribed to replace Gabapentin and Clonazepam were not effective. [Jail Records, Dkt. No. 20-10 at 18]. Defendant Acree, the Director of Nursing at HCJ, responded to Plaintiff's grievance and deemed it unfounded, stating, "Benzos and Gabapentin are not allowed in the jail setting per protocol."[3] [*Id.* at 19; *see* Acree Decl. ¶ 2]. Plaintiff appealed that determination to the Jail Administrator, but Plaintiff's appeal was denied. [*See* Jail Records, Dkt. No. 20-10 at 19].

Defendant Acree "do[es] not supervise the physician(s) who provide medical services to inmates at HCJ," and Defendant Acree "ha[s] no authority to direct or instruct them to provide certain medical care or treatment." [Acree Decl. ¶ 16]. More specifically, Defendant Acree "was not a health care provider for Plaintiff . . . during the period of his incarceration at HCJ" and "was not personally involved in Plaintiff's medical care at any time." [*Id.* ¶ 5]. Defendant Acree's decision to deny Plaintiff's March 7, 2021 grievance "was based on the fact that [Plaintiff] could not, as a matter of policy, be prescribed Clonazepam and Gabapentin and that other medical staff had prescribed substitute medications for Plaintiff." [*Id.* ¶ 12]. Defendant Acree "was not involved in the decision to prescribe any of these medications" and "[a]t no time . . . ha[d] the authority to dictate medication administration . . . at HCJ." [*Id.* ¶¶ 8, 17].

### C.) Evidence Pertaining to Plaintiff's Bunk Status

HCJ "maintains certain policies governing the criteria for bottom bunk assignments," as "it is understood that some inmates may not be able to climb up onto a top bunk due to various medical conditions." [Cane Decl. ¶ 8]. Under HCJ's applicable policy (the "Bottom Bunk Protocol"), the following factors are considered in issuing a "no top bunk" order for an inmate:

---

[3] "Benzos" in this context is short for benzodiazepines, a class of drug that includes Clonazepam. [*See* Cane Decl. ¶ 4].

(1) whether the inmate is more than 60 years of age; (2) whether the inmate has significant musculoskeletal immobility; (3) whether the inmate had any major surgery or trauma involving the back, beck, chest, abdomen, or extremities within the past six weeks; (4) a documentation history of seizure disorders on medication; (5) severe cardiac or pulmonary disease; (6) whether the inmate is on an active detox protocol; and (7) whether the inmate is pregnant.

[*Id.*]. Plaintiff initially was assigned a top bunk at HCJ. [Felton Decl. ¶ 4, Dkt. No. 20-12].

On March 12, 2021, during a medical appointment with unknown HCJ staff, Plaintiff requested a bottom bunk. [*See* Jail Records, Dkt. No. 20-4 at 59]. Plaintiff was advised that he did not meet the criteria for receiving a bottom bunk assignment. [*Id.*]. In a sick call request dated March 16, 2021, Plaintiff complained of back pain and renewed his request for a bottom bunk. [Sick Call Request, Dkt. No. 8-1 at 11]. As before, Plaintiff was informed that the applicable criteria were not met. [*Id.*; Jail Records, Dkt. No. 20-4 at 77]. Plaintiff again asked for a bottom bunk in a sick call request dated March 22, 2021, adding that he had "severely injur[ed]" his arm while climbing into his top bunk, which had caused "severe pain." [Jail Records, Dkt. No. 20-4 at 10]. Once again, Plaintiff was told that he did not meet the criteria for a bottom bunk. [*Id.* at 78].

Plaintiff filed an inmate grievance on March 25, 2021, and repeated his request for a bottom bunk. [Jail Records, Dkt. No. 20-10 at 20]. Defendant Acree responded to the grievance and deemed it unfounded, stating, "Seen in March by provider and 'no top bunk' order denied. This was also explained on 3/22/21 by staff." [*Id.* at 21]. Plaintiff appealed to the Jail Administrator, without success. [*Id.* at 23].

Defendant Acree's decision to deny Plaintiff's March 25, 2021 grievance "was based on adherence to the bottom bunk policies and protocols in place at HCJ." [Acree Decl. ¶ 14]. Defendant Acree "did not formulate those policies, and . . . did not personally provide medical care or treatment to Plaintiff for his back pain." [*Id.*] "At no time did [Defendant Acree] have the authority to dictate . . . bottom bunk protocols and procedures at HCJ." [*Id.* ¶ 17].

6

### III. Analysis

**A.) Defendant Acree's Motion for Summary Judgment**

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014); *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, the nonmovant must present specific facts that demonstrate a genuine dispute for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v.*

7

*Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Rather, there must be enough evidence to enable a reasonable factfinder to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 252. Moreover, "at the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The critical inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The Court construes Plaintiff's Amended Complaint as raising § 1983 claims of inadequate medical care against Defendant Acree, specifically concerning: (1) Plaintiff's medications and (2) the disputed bunk assignment. Because Plaintiff was a pretrial detainee at all times relevant to the Amended Complaint, his claims arise under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). However, courts "have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs." *Id.*

A prison official violates the Eighth Amendment by "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

A deliberate-indifference claim consists of an objective and a subjective component. *Id.* "Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241

8

(4th Cir. 2008)). Subjectively, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Under this standard, mere disagreements between an inmate and a physician over the inmate's proper medical care are not actionable absent exceptional circumstances." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (alteration and internal quotation marks omitted).

### 1.) Plaintiff's Medications

Defendant Acree avers that she was not personally involved in Plaintiff's medical care and lacked the authority to change his prescriptions, and the record contains no evidence to the contrary. "To establish personal liability under § 1983, . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution," and "mere knowledge of such a deprivation does not suffice." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (alteration, citation, and internal quotation marks omitted). On this basis alone, Defendant Acree is entitled to summary judgment for Plaintiff's medication claim.

Even if Defendant Acree had been authorized to decide which medications Plaintiff received, the evidence concerning this claim would amount to an ordinary dispute over the proper course of treatment. Such disagreements are insufficient to sustain a deliberate-indifference claim absent exceptional circumstances, *see Scinto*, 841 F.3d at 225, and no exceptional circumstances are present here. Plaintiff received several medications—to treat both his physical and mental-health conditions—consistently throughout his detainment at HCJ. [*See* Jail Records, Dkt. No. 20-2 at 17–61]. Plaintiff objected to the discontinuation of two prescriptions that were not available to HCJ inmates as a matter of policy, but he was prescribed other medicines as substitutes, and

9

Plaintiff does not have a constitutional right to receive the medication of his choice. *See generally Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.").

Because no genuine dispute of material fact exists as to these issues, the Court will grant summary judgment to Defendant Acree on Plaintiff's medication claim.

### 2.) Plaintiff's Bunk Assignment

As with the dispute over Plaintiff's medications, the issue of Plaintiff's bunk assignment amounts to an ordinary difference of opinion as to treatment, which is not actionable under § 1983. Evidence indicates that Dr. Sellman recommended a bottom bunk for Plaintiff. [*See* Letter, Dkt. No. 8-1 at 2; Jail Records, Dkt. No. 20-4 at 61]. HCJ staff, applying the Bottom Bunk Protocol, reached a different conclusion. [*See* Jail Records, Dkt. No. 20-4 at 59, 77–78]. Defendant Acree—who undisputedly "was not a health care provider for Plaintiff"—merely upheld the medical staff's determination, "based on adherence to the bottom bunk policies and protocols in place at HCJ," over which Defendant Acree had no authority or control. [*See* Acree Decl. ¶¶ 5, 14, 17].

Nothing in the record suggests that Defendant Acree did so with deliberate indifference. Plaintiff continually received treatment for his pain, and there is no evidence that Defendant Acree subjectively knew that denying the extra medical accommodation of a bottom bunk posed an excessive risk to Plaintiff's health or safety. As a result, Plaintiff cannot prevail on his bunk-assignment claim, and Defendant Acree is entitled to summary judgment.

### B.) The Doe Defendants

As noted, the Amended Complaint lists the names "John Doe" and "Jane Doe" in the case caption but does not allege any acts or conduct by these individuals, who are now the only

Defendants remaining in this action. When a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines" that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level," with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Furthermore, if a complaint "alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for [a] name appearing in the caption, the complaint is properly dismissed [as to that defendant], even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (per curiam). That is the situation here, and Plaintiff falls well short of stating a plausible § 1983 claim against the Doe Defendants. Accordingly, Plaintiff's claims against Defendants John Doe and Jane Doe will be dismissed pursuant to 28 U.S.C. § 1915(e)(2), and the Court will dismiss this civil action.

## IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, Defendant Nurse Acree's Motion for Summary Judgment [Dkt. No. 32] will be **GRANTED**, Plaintiff's claims against Defendants John Doe and Jane Doe will be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2), and this civil action will be **DISMISSED**.

Entered this 13st day of April 2023.

Alexandria, Virginia

/s/
Anthony J. Trenga
Senior United States District Judge

11